UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JOSHUA HORNE, an individual,

    Plaintiff,

    v.

VERIZON COMMUNICATIONS, INC., a Delaware Corporation,
and CELLCO PARTNERSHIP, a Delaware entity,
all d/b/a VERIZON WIRELESS,

    Defendants.
_____/

## **COMPLAINT**

1. This is an action for damages in excess of Seventy-Five Thousand Dollars ($75,000.00).

2. Plaintiff, JOSH HORNE (hereinafter referred to as "Plaintiff" and "HORNE"), brings this action against Defendants, VERIZON COMMUNICATIONS, INC. and CELLCO PARTNERSHIP, d/b/a VERIZON WIRELESS (collectively "VERIZON WIRELESS" and "Defendants"), for alleged violations of the Florida Whistleblower Act, F.S. §448.101 *et seq*.

3. At all times material to this Complaint, HORNE has been a resident of the State of Florida residing in Bay County, Florida.

4. At all times material to this Complaint, Defendants, VERIZON COMMUNICATIONS, INC., a Delaware Corporation, and CELLCO PARTNERSHIP, a Delaware entity, have been based at One Verizon Way, Basking Ridge, New Jersey, 07920 and have owned and managed a nationwide wireless telephone and internet company doing business as VERIZON WIRELES with retail locations throughout the United States, including in Panama City, Florida in Bay County, within the jurisdiction of the Court.

1

5. Jurisdiction is conferred on this Court by 28 U.S.C. §1332.

6. All of the events, or a substantial part of the events, giving rise to this action, occurred in Panama City, Florida, in Bay County, within the jurisdiction of the United States District Court for the Northern District of Florida, Panama City Division.

7. Between approximately September 2010 and November 2020, HORNE worked for VERIZON WIRELESS as a Solutions Specialist in Defendants' Panama City, Florida store (Store #2252201) located at 411a E 23rd Street, Panama City, Florida 32405, with HORNE's gross annual wages from VERIZON WIRELESS totaling approximately: (a) $69,565.06 in 2019; and (b) $61,040.29 in 2020, in addition to which HORNE received employee benefits from VERIZON WIRELESS including but not limited to health and dental insurance, a savings plan, and life insurance which were worth several thousand dollars per year.

8. On November 14, 2020, after HORNE observed for an extended period of time over the previous weeks during the COVID-19 pandemic that several co-workers at Defendants' Panama City store including, for example, Solutions Specialist Jose Lopez, frequently removed their masks and/or pulled their masks down beneath their chin (including but not necessarily limited to in confined spaces such as the inventory room and shared corridors in the back of the store) in violation of COVID-19 safety protocols, HORNE first reported to VERIZON WIRELESS' Assistant Store Manager, Ashley Walker, Plaintiff's complaint that VERIZON WIRELESS was not complying with its obligation to provide HORNE and other employees with a safe work environment—as mandated by for example, *inter alia*, the Occupational Safety and Health Act (OSHA), *see, e.g.*, 29 U.S.C. §654, OSHA's General Duty Clause.

9. Significantly, HORNE had requested in early November 2020 to VERIZON WIRELESS' Assistant Store Manager, Ashley Walker, that VERIZON WIRELESS take remedial

action to enforce COVID-19 safety protocols with respect to Personal Protective Equipment (PPE), namely employees' consistent and proper use of masks, in accordance with VERIZON WIRELESS' own well established policy that employees, vendors, and customers wear masks at all times within the store, unless—for example—an employee was able to maintain social distancing guidelines of six (6) feet or more.

10. Shortly after HORNE's initial safety complaint to VERIZON WIRELESS on November 14, 2020, VERIZON WIRELESS' Assistant Store Manager, Ashley Walker, notified HORNE later on November 14th that she had spoken with the Panama City store's other employees about following COVID-19 safety protocols, but almost immediately, HORNE was mocked by other employees including Jose Lopez because of HORNE's safety complaint, with Lopez teasing HORNE when Lopez entered the store's breakroom by Lopez loudly exclaiming: "Oh, whoa! Mask check, mask check! You got your masks up? Mask check!"

11. In response, HORNE replied on November 14, 2020 to Jose Lopez that following COVID-19 safety protocols in the workplace was not a joke to him but rather was a serious safety concern, in the course of which statement HORNE used the expletive "fucking"—more specifically, as best as HORNE recalls, by telling Lopez that "it isn't a fucking joke." Lopez became incensed and flew into a rage, threatening HORNE and screaming at him while HORNE was seated in a chair: "You better watch how you talk to me, bro. Watch how you talk. I was only joking."

12. After HORNE again told Jose Lopez on November 14, 2020 about serious the health risks posed by employees not following COVID-19 safety protocols, Lopez ripped off his mask, threw the mask on the floor, puffed out his chest, took on a fighting stance, and stepped towards HORNE in a clear attempt to both antagonize and intimidate HORNE (all while HORNE

3

was seated below Lopez).

13. In an effort to try and diffuse the situation, and because Jose Lopez was (physically) only a few away from HORNE, Plaintiff asked Lopez on November 14, 2020 to both put his mask on and to back off. However, Lopez instead proceed to gesture wildly and further point at HORNE while Lopez walked closer to HORNE's chair, while Lopez continued yelling at HORNE.

14. Next on November 14, 2020, with HORNE cornered and seated in a chair, Jose Lopez came within approximately two (2) feet of HORNE's person, all while Lopez had his mask off, throughout which time Lopez was still loudly yelling at HORNE in a hostile, threatening manner. Notably, despite HORNE repeatedly asking Lopez to step back and move away from his person, Lopez refused to do so, and Lopez instead paced back and forth close to HORNE while Lopez screamed: "I was just joking around bro. What the fuck is wrong with you?"

15. Despite Jose Lopez's threatening behavior towards HORNE in November 2020, Plaintiff again told Lopez on November 14, 2020 that complying with COVID-19 safety protocols and wearing a mask were not joking or funny matters.

16. After Jose Lopez briefly walked out of the Panama City store's break room on November 14, 2020, Lopez returned and again leered at HORNE as he stood above HORNE in an effort to try and bait HORNE into engaging in a physical altercation. Significantly, VERIZON WIRELESS' Assistant Store Manager, Ashley Walker, who had been nearby in the store on November 14, 2020 and was close enough to observe and/or hear what had been happening, attempted several times to get Lopez to calm down and walk away but even Walker was unsuccessful at diffusing Lopez's hostile behavior.

17. Ultimately, with Jose Lopez only inches away from HORNE's face on November 14, 2020, HORNE was able to get out of the corner and move past Lopez while HORNE asked

4

Lopez to leave the area. Finally, as Lopez walked away, Lopez threatened HORNE again, stating: "What do you think I'm afraid of you? Do you think a little muscle scares me?"

18. A few days later, on November 16, 2020, after Jose Lopez and another VERIZON WIRELESS Solutions Specialist, Jeremiah Brown, began arguing in Defendants' Panama City store about the handling of customers on the sales floor—first while in the back of the store and then on the showroom floor—HORNE heard Lopez loudly state to Mr. Brown: "I'm not here to clean up anybody's sloppy mess." Subsequently, while HORNE was also on the salesroom floor, Lopez angrily screamed at HORNE: "And I don't want to hear shit from you!"

19. Jose Lopez and HORNE then engaged in a heated discussion on November 16, 2020, during which Lopez reverted to aggressively yelling in HORNE's face—just as Lopez had done two days earlier—and as part of which Lopez physically put his forehead directly in front of HORNE's head making direct contact with HORNE's face.

20. Additionally on November 16, 2020, just as HORNE had previously done on November 14, 2020, HORNE again attempted to de-escalate the situation with Lopez on November 16th, and with VERIZON WIRELESS' Assistant Store Manager, Shane Duncan, present, HORNE asked Lopez to socially distance and stay six (6) feet away from HORNE.

21. However, Jose Lopez instead ripped off his mask (again) on November 16, 2020 and charged at HORNE while Lopez yelled at and threatened HORNE, including Lopez shouting: "I'm going to beat your ass."

22. HORNE promptly called VERIZON WIRELESS' District Manager, Trumaine Polk, on November 16, 2020 and reported being assaulted by Jose Lopez, in response to which Polk assured HORNE that VERIZON WIRELESS would take remedial action to help HORNE and address Lopez's violent behavior in the workplace.

23. Despite assurances from VERIZON WIRELESS' management that HORNE would be provided a safe work environment, Defendants scheduled HORNE and Lopez to work the same shifts over approximately the next week in or around late November 2020, during which time HORNE suffered panic attacks and experienced high blood pressure as a result of the stress he endured while working in fear for his physical safety, for which HORNE also called out of work on, for example, November 23, 2020.

24. By November 24, 2020, because no one from VERIZON WIRELESS' Human Resources department had contacted HORNE after more than a week regarding HORNE's safety complaints about Jose Lopez, HORNE spoke to Defendants' Assistant Manager, Shane Duncan, about the nature of the anxiety HORNE was experiencing while having to working around Lopez and the fear HORNE had about the potential of escalating violence by Lopez against HORNE.

25. Similarly, on November 24, 2020, HORNE also contacted VERIZON WIRELESS' District Manager, Trumaine Polk, again because HORNE never heard back from Polk (or anyone else in VERIZON WIRELESS' management).

26. Although HORNE feared for his safety in the workplace at VERIZON WIRELESS in November 2020, Plaintiff was out of sick time for the 2020 calendar year and thus was left in a precarious position with HORNE having serious reservations about continuing to work for Defendants in the same physical location as Jose Lopez while Plaintiff feared for his safety and well-being in the workplace.

27. VERIZON WIRELESS' District Manager, Trumaine Polk, almost immediately scheduled a conference call for HORNE on November 24, 2020 with VERIZON WIRELESS' local HR representative, Nicole Hurd, during which call HORNE communicated to VERIZON WIRELESS' management, *inter alia*:

6

(a) HORNE's safety concerns about continuing to work around Jose Lopez in light of Lopez's threats against Plaintiff and Lopez's previous violent outbursts;

(b) the anxiety and stress HORNE was experiencing as a result of Jose Lopez's attacks against HORNE; and

(c) HORNE's concern that seemingly no remedial action had been taken by VERIZON WIRELESS to address Jose Lopez's violent conduct or to protect HORNE as an employee who reported in good faith COVID-19 safety complaints to Defendants.

28. Despite HORNE's safety complaints to VERIZON WIRELESS, Plaintiff was informed during the November 24, 2020 conference call with Human Resources that joint shifts with HORNE and Jose Lopez would continue to be regularly scheduled while VERIZON WIRELESS conducted an internal investigation.

29. On November 30, 2020, as HORNE continued to suffer from panic attacks, HORNE contacted VERIZON WIRELESS' local HR representative, Nicole Hurd, but Plaintiff was notified that Hurd was on vacation out of the office.

30. HORNE also called VERIZON WIRELESS' District Manager, Trumaine Polk, on November 30, 2020 but Plaintiff was unable to reach Polk, as a result of which HORNE contacted VERIZON WIRELESS HR Manager, Clinton Outerbridge, on November 30, 2020 to try and obtain help from VERIZON WIRELESS for the seemingly impossible situation HORNE found himself in, conflicted between not wanting to lose his job with VERIZON WIRELESS but Plaintiff fearing for his well-being and safety just by going into Defendants' Panama City store in order to work.

31. After HORNE recounted to VERIZON WIRELESS HR Manager, Clinton Outerbridge, on November 30, 2020 the events involving and threats made by Jose Lopez, as well as HORNE's COVID-19 safety complaints to VERIZON WIRELESS' management, Outerbridge assured HORNE that these matters were very serious and would be addressed right away by

VERIZON WIRELESS.

32. A few minutes later on November 30, 2020, VERIZON WIRELESS' local HR representative, Nicole Hurd, called HORNE seemingly in an effort to explain why, according to Hurd, VERIZON WIRELESS' internal investigations typically took a long time before anything could be expected to be learned or any tangible action taken by the company.

33. HORNE advised VERIZON WIRELESS' local HR representative, Nicole Hurd, on November 30, 2020 that not only had HORNE spoken with Clinton Outerbridge but Outerbridge acknowledged to HORNE that Jose Lopez's conduct constituted an assault.

34. Later on November 30, 2020, VERIZON WIRELESS' District Manager, Trumaine Polk, contacted HORNE and facilitated a conference call with VERIZON WIRELESS' Senior Human Resources Manager, Katie Moseley, during which call HORNE again communicated to VERIZON WIRELESS Plaintiff's safety concerns about working with Jose Lopez in the Panama City store in light of not only HORNE's COVID-19 complaints but also Lopez's assaults against HORNE and the continued anxiety and fear HORNE was experiencing about the potential of further violence by Lopez against HORNE in the workplace.

35. VERIZON WIRELESS' District Manager, Trumaine Polk, commented during the November 30, 2020 conference call that VERIZON WIRELESS' internal file notes reflected that HORNE was purportedly "fine" with continuing to work alongside Jose Lopez while VERIZON WIRELESS conducted its internal investigation - - despite HORNE having previously repeatedly communicated his fears to management about being required to work in the same location as Jose Lopez.

36. On December 1, 2020, VERIZON WIRELESS HR Manager, Clinton Outerbridge, contacted HORNE to inquire about the status of VERIZON WIRELESS' other Human Resources

8

personnel communicating with HORNE about Plaintiff's safety complaints.

37. On December 2, 2020, while HORNE and VERIZON WIRELESS' District Manager, Trumaine Polk, were both present at the Panama City store, a follow-up conference call was held with VERIZON WIRELESS' Senior Human Resources Manager, Katie Moseley, along with another VERIZON WIRELESS employee who was also on the call (but who HORNE did not know).

38. Because VERIZON WIRELESS' District Manager, Trumaine Polk, was at Defendants' Panama City store on December 2, 2020, some—but not all—security footage was viewed on a desktop computer in the back office in the store, beginning with a discussion about some of the events which occurred on November 14 and 16, 2020.

39. HORNE perceived on December 2, 2020 that VERIZON WIRELESS' Senior Human Resources Manager, Katie Moseley's, initial questioning on December 2nd was directed at assigning blame with HORNE for Jose Lopez's attacks against Plaintiff and Lopez's COVID-19 safety violations, which was only amplified when Moseley informed HORNE that Jose Lopez claimed that HORNE had threatened Lopez by HORNE purportedly making the following statements to Lopez: (a) "I'm going to kill you"; (b) "I'm going to rip you limb from limb"; and (c) "I'm going to teach you some manners."

40. HORNE unequivocally denied on December 2, 2020 to VERIZON WIRELESS' Senior Human Resources Manager, Katie Moseley, that Plaintiff made the threatening statements to Jose Lopez because, in fact, HORNE never made any threats to Lopez whatsoever.

41. Based upon information and belief, none of HORNE's co-workers from VERIZON WIRELESS' Panama City store corroborated Jose Lopez's false allegations against HORNE because the statements Lopez attributed to HORNE were a fiction created by Lopez and/or

Defendants.

42.     Later during the December 2, 2020 conference call, VERIZON WIRELESS' Senior Human Resources Manager, Katie Moseley, questioned what she described as HORNE "head-butting" Jose Lopez on November 16, 2020—despite it being Lopez who had pressed his forehead into HORNE's face on November 16th.

43.     Notably, VERIZON WIRELESS' Senior Human Resources Manager, Katie Moseley, subsequently acknowledged during the December 2, 2020 conference call (after she re-reviewed the security footage) that it was Jose Lopez, and not HORNE, who had initiated head-to-head contact with HORNE, a fact which VERIZON WIRELESS' Assistant Manager, Shane Duncan, also previously confirmed upon seeing Jose Lopez as the clear aggressor on November 16, 2020 when Lopez pushed his head into HORNE's face.

44.     VERIZON WIRELESS' Senior Human Resources Manager, Katie Moseley, repeatedly asked HORNE on December 2, 2020 to "admit' that Plaintiff had violated VERIZON WIRELESS' "Code of Conduct" by not retreating from the November 2020 attacks initiated by Jose Lopez against HORNE, which policy violation(s) HORNE denied and which Plaintiff believed was both reflected in the security footage on video and corroborated by other VERIZON WIRELESS employees who were present in the Panama City store in November 2020.

45.     At the conclusion of the December 2, 2020 conference call, VERIZON WIRELESS' Senior Human Resources Manager, Katie Moseley, told HORNE that VERIZON WIRELESS had not yet made any decisions from its internal investigation but until the investigation was finished, Jose Lopez and HORNE would now have alternating days off—such that they were no longer be working in Defendants' Panama City store at the same time.

46. At all times material to this Complaint, including but not limited to between November 2020 and December 2020, HORNE satisfactorily performed his duties as a Solution Specialist for VERIZON WIRELESS.

47. On December 15, 2020, VERIZON WIRELESS' District Manager, Trumaine Polk, informed HORNE that VERIZON WIRELESS was terminating HORNE's employment for "violence in the workplace" and for what Polk explained was VERIZON WIRELESS' conclusion that HORNE had violated company policy on "treating coworkers professionally,"[1] which reasons were a pretext for unlawful retaliation for Plaintiff's repeated safety complaints, in violation of the Florida Whistleblower Act, F.S. §448.102(3).

48. The reasons proffered by VERIZON WIRELESS in December 2020 for the termination of HORNE's employment were false and were a pretext for retaliation against Plaintiff for his repeated opposition to and complaints about the unsafe conditions in the Panama City store which Plaintiff in good faith believed were illegal, in violation of the Florida Whistleblower Act, F.S. §448.102(3).

49. All conditions precedent to the institution of the claims in this Complaint have either occurred or been waived.

**COUNT I - VIOLATION OF FLORIDA'S WHISTLEBLOWER ACT, F.S. §448.102**

Plaintiff, JOSHUA HORNE, reasserts and reaffirms the allegations of Paragraphs 1 through 49 as if fully set forth herein and further states that this is an action against CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS for violations of Florida Statutes §448.101 *et seq.*,

---

[1] Within approximately one (1) hour of being terminated, VERIZON WIRELESS' Corporate Security called HORNE and instructed HORNE that he needed to return his cell phone immediately. When HORNE asked Corporate Security if he could have time to ensure that any data and information on the phone could be preserved, HORNE was notified that if he failed to return the phone as directed, VERIZON WIRELESS would seek criminal charges against HORNE for theft.

11

Florida's Whistleblower Act.

50. At all times material to this Complaint between, HORNE was an "employee" of VERIZON WIRELESS within the meaning of F.S. §448.101(2).

51. At all times material to this Complaint, VERIZON WIRELESS employed Ten (10) or more employees during multiple work weeks in 2020 and 2021.

52. At all times material to this Complaint, VERIZON WIRELESS was an "employer" of HORNE within the meaning of F.S. §448.101(3).

53. Under Florida's Whistleblower Act, F.S. §448.102, an employer **may not** take any **retaliatory personnel action** against an employee because the employee has:

> (1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.
>
> (2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.
>
> **(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.**

54. HORNE engaged in protected activity on multiple occasions in November 2020 and December 2020 within the meaning of F.S. §448.102(2) when Plaintiff objected to and complained to VERIZON WIRELESS' upper management about: (a) VERIZON WIRELESS failing to provide HORNE and other employees with a safe work environment; (b) VERIZON WIRELESS not enforcing COVID-19 safety protocols in Defendants' Panama City store, namely

with respect to Personal Protective Equipment (PPE) and employees' failure to consistently and properly using masks inside the store; (c) VERIZON WIRELESS failing to take action to address and prevent violence and threats by Defendants' Solutions Specialist, Jose Lopez, against HORNE, which practices HORNE in good faith believed were illegal.

55. On December 15, 2020, VERIZON WIRELESS unlawfully terminated HORNE's employment in retaliation for Plaintiff's good faith objections to and repeated complaints to Defendants' management about VERIZON WIRELESS' safety practices, in violation of F.S. §448.102(3).

56. Between approximately November 2020 and December 2020, HORNE reasonably and in good faith believed that VERIZON WIRELESS' failure to (a) provide HORNE and other employees with a safe work environment; (b) enforce COVID-19 safety protocols in Defendants' Panama City store, namely with respect to Personal Protective Equipment (PPE) and employees' failure to consistent and proper use of masks while inside the store; (c) take remedial action to address and prevent violence and threats by Defendants' Solutions Specialist, Jose Lopez, against HORNE, were all illegal practices that violated one or more "laws, rules, or regulations" within the meaning of Florida's Whistleblower Act, F.S. §448.101(4).

57. More specifically, one or more "laws, rules, or regulations" within the meaning of Florida's Whistleblower Act, F.S. §448.101(4), which were applicable to VERIZON WIRELESS and pertained to Defendants' business which HORNE reasonably and in good faith believed VERIZON WIRELESS was violating between approximately November 2020 and December 2020 includes, but was not necessarily limited to, the Occupational Safety and Health Act (OSHA), *see, e.g.*, 29 U.S.C. §654, OSHA's General Duty Clause.

58. The fact that HORNE engaged in activity protected by Florida's Whistleblower Act was a motivating factor in VERIZON WIRELESS' "retaliatory personnel action" against HORNE and the unlawful termination of Plaintiff's employment in December 2020, in violation of F.S. §448.102(3).

59. VERIZON WIRELESS' violations of F.S. §448.102 were willful, egregious and in direct violation of the statutory protections expressly set forth in Florida's Whistleblower Act.

60. HORNE has suffered lost earnings, emotional distress, loss of self-esteem and other damages as a direct result of VERIZON WIRELESS' violations of F.S. §448.102.

61. Pursuant to F.S. §448.104, HORNE is entitled to recover his reasonable attorneys' fees and costs from VERIZON WIRELESS.

WHEREFORE, Plaintiff, JOSHUA HORNE, demands judgment against Defendants, jointly and severally, VERIZON COMMUNICATIONS, INC. and CELLCO PARTNERSHIP, d/b/a VERIZON WIRELESS, for back pay, employment benefits and other compensation including bonuses, compensatory damages, emotional distress, equitable relief, including, but not limited to, reinstatement or front pay, interest, attorneys' fees, costs, and such other and further relief as this Honorable Court deems proper.

## JURY TRIAL DEMAND

JOSHUA HORNE demands trial by jury on all issues so triable.


Dated:  May 21, 2021                     Respectfully submitted,

                                   By:   **KEITH M. STERN**
                                         Keith M. Stern, Esquire
                                         Florida Bar No. 321000
                                         E-mail: employlaw@keithstern.com
                                         LAW OFFICE OF KEITH M. STERN, P.A.

80 SW 8th Street, Suite 2000
Miami, Florida 33130
Telephone: (305) 901-1379
Fax: (561) 288-9031
Attorneys for Plaintiff